UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BOBBIE DENISE CATTON,<br><br>Defendant. | CASE NO. CR02-217-RSL<br><br>REPORT AND RECOMMENDATION AFTER EVIDENTIARY HEARING ON ALLEGED VIOLATIONS OF SUPERVISED RELEASE |

## INTRODUCTION

I conducted a revocation of supervised release evidentiary hearing in this case on October 9, 2007.  The United States was represented by Bruce Miyake.  The defendant was represented by Lee Covell.

## CONVICTION AND SENTENCE

Defendant had been convicted of Identification Fraud on or about October 2, 2007.  The Honorable Chief Judge Robert S. Lasnik of this court sentenced Defendant to 33 months of confinement, followed by 3 years of supervised release.  The conditions of supervised release included requirements that defendant comply with the standard 13 conditions.

//

PAGE -1-

SUMMARY OF ALLEGATIONS

U.S. Probation Officer Tammy White alleged that Defendant violated the conditions of supervised release in the following respects:

1.    Committing the crime of Driving Under the Influence on or about January 8, 2007, in violation of standard condition that she not commit another federal, state or local crime;

2.    Consuming alcohol on or about January 8, 2007, in violation of the special condition of supervised released requiring her to abstain from the use of alcohol.

At the initial hearing before the Honorable Mary Alice Theiler, the defendant was advised of these allegations and of her constitutional rights. She admitted committing violation no. 2. Dkt. No. 50, 56. At the evidentiary hearing, the Government presented four witnesses and the defense presented one witness. The Defendant also testified at today's hearing.

VIOLATION NUMBER ONE - DRIVING WHILE UNDER THE INFLUENCE

1.    On direct examination, the Government's first witness, K. Bonham, testified that he observed a light-colored car weaving in its lane. Shortly thereafter, he observed that the driver was female, with long hair, a "dishwater blonde," and then positively identified the defendant in court as the driver of the light-colored car. No one else appeared to be in the car with the defendant. He observed her driving at a speed in excess of 70 miles per hour. Another car appeared to be following the car driven by the defendant. Shortly thereafter, the speed of the two cars slowed to 20 mph. By that time however, Mr. Bonham called 9-1-1 to report the erratic driving by the defendant.

2.    Mr. Bonham testified that the defendant's car took a dramatic left turn towards his van, however, no collision occurred. He continued to observe two lane crossings from left to right on Highway 509. He observed the defendant's driving for over a mile. Mr. Bonham took the next highway exit, but decided to double back. His last observation of the defendant's driving was at a speed in excess of

70 to 75 mph.

3.   Upon his return he did not see any other vehicles traveling on the roadway.  He saw the defendant's car stopped with its lights on, and heavy vehicle damage to the car and saw the defendant standing in front of the vehicle.  He estimated that only two to three minutes had passed since he had left the highway, doubled back and saw the damaged vehicle.  From his vantage point, a distance of three feet, he believed she was unresponsive, giving him no eye contact.  He again called the police and waited at a nearby street  for an officer for the next 20 to 30 minutes.  While waiting he observed the defendant walking but she did not leave the scene, except to speak to a taxi-cab driver.  No one else came to the scene or left the scene.

4.   On cross-examination, Mr. Bonham described overhead lighting where the defendant's vehicle stopped.  He observed heavy damage on the front bumper which was misaligned and "shoved in" with scraping on the side.  He was not sure if there was hood damage.  As he drove next to the defendant's vehicle he was never on the right (passenger) side of the vehicle.

5.   The second of the Government's witnesses,  Detective J. Holland from the King County Sheriff's Office major crimes unit, was working patrol and dispatched to a potential DUI, at 12:29 a.m.  He was dispatched to the location because it was reported a vehicle had driven the rubber off its rims and may have been in a accident.  He arrived about a half hour later and saw a Gold Saturn vehicle with rims only.  He observed at a closed Chevron gas station that the vehicle's lights were off and there was no rubber on the tire.  The vehicle sustained right side damage consistent with side-swiping mid way the door level and extending the length of the vehicle.  The officer did not recall any front-end damage.  He observed a female driver behind the wheel who was unresponsive, and a strong odor of alcohol.  He helped her to his vehicle where she later vomited.  A DUI

1    officer was called to the scene who then called an aid car for medical clearance

2    before the DUI process began.  Within the fifty minutes he was there, no one

3    returned to be associated with the vehicle.  The detective saw only one person, the

4    defendant.  He admitted that he did not photograph the damage.

5    6.    The Government's third witness, D. Jeffries, is a King County Sheriff's Deputy in

6          the DUI Squad.  His experience included having conducted over 2,000 arrests and

7          investigated over 10,000 DUI's since 1992.  He observed the female driver who

8          was covered in vomit.  Her car had front end damage and a right tire off the rim.

9          The officer contacted the defendant who was identified by the detective as the

10         driver.  He described her condition as lethargic and "out of it."  He also observed,

11         red, watery, bloodshot, slurred speech and the strong odor of intoxicants and

12         stated she was " very, very drunk."  Medics determined she needed hospital care.

13         At Valley Medical Center where her rights were read, she acknowledged her rights

14         and refused to submit to any tests, including blood tests.  A waiver was not

15         provided for her to sign.

16   7.    Deputy Jeffries testified that he was familiar with the distance the car traveled,

17         described by the first witness as about two miles.  There was no cross-examination

18         of Deputy Jeffries.

19   8.    The Government's last witness was USPO Tammy White, who is familiar with the

20         defendant in her capacity to supervise the defendant.  A condition of not

21         consuming alcohol was imposed, in part, due to her past criminal history of

22         possession with intent to distribute methamphetamine and her self-report that by

23         age 13 she had a serious substance abuse problem which included alcohol.

24   9.    The defendant reported the DUI incident to USPO White and gave an explanation

25         that she attended a company Christmas party where she drank.  The defendant also

26         explained that she did not remember anything other than she awoke in a hospital

27         after attending the office party.  She could only remember having a double shot of

28

PAGE -4-

alcohol.  Her blood alcohol level from the medical records indicated a level of .23.
Medical records also reflected her statement that " she wanted to know whether
she had killed anyone."

10.    Once USPO White indicated to the defendant that a violation would be brought to
the district court, the defendant said that she was not sure if she had been driving.
A few days later, USPO White received an affidavit from Mr. Clendenen that
indicated that he, and not the defendant, was the driving her car on the night of the
DUI, although neither his identity nor his role had been previously proffered by the
defendant.

11.    The defendant's testimony is that she became intoxicated after an office Christmas
party gift exchange on January 8, 2007.  She had eight drinks: three or four
"doubles."  She testified that she experienced an alcoholic blackout and only
started putting bits an pieces together a week later and after she spoke with USPO
White.  After speaking with others about the party is when she first learned
someone else had driven her from the office party.  She admitted her blood alcohol
level was .28.

12.    The defendant identified an insurance claim and settlement proposal for damage to
her car.  Exhibit No. 1.  It reflected damage to the rear quarter passenger side of
the defendant's car along with a photograph of the damage and a copy of the
police collision report.

13.    Second witness for the defense, F. Clendenen, testified that he knew the defendant
as part of a professionals support group for persons with substance abuse
problems.  He testified that another person assisted her in getting into the back
seat.  He, however, drove to take the defendant to her house.

14.    One difficulty Mr. Clendenen had while driving was a flat tire at the location off
the First Avenue South bridge.  His ability to drive the car got worse, "squirrely."
His speed on the bridge was 60 mph, but he hit something, started slowing down

and the tire was going flat at a rapid rate.  The passenger front tire was pulling the car to the right side of the road, but he testified that he continued to the Chevron station because he believed it was still open.

15. He also identified the defendant's vehicle and its damage to the right side in Exhibit No. 2 as pre-exiting, having occurred before the DUI incident.  Mr. Clendenen testified that once at the Chevron station, he awakened the defendant, but left her in her car.  He went home then came back to the station after approximately 45 minutes, maybe an hour.

16. On cross-examination, he admitted he was concerned that she was drunk and needed a ride home, however, when he left her at the station, he also left the keys to her car.  He recalled that he had no problems driving her car before he hit something, but did not know what he hit.  He recalled that the Chevron gas station was closed but there lights were on.  At that point the rubber from the tire was off.  Before leaving, he woke her up, tried to get her to go with him, but she looked sick, so he left.  When he drove back, nobody was there, so he returned home.  He admits not calling her or her parent's house where she lived.

17. The defendant called him saying she had gone to jail, charged with DUI.  He told her that he was driving.  Their conversation occurred in January 2007.

<u>RECOMMENDED FINDINGS AND CONCLUSIONS</u>

Based upon the foregoing, I recommend the court find that Defendant has violated the conditions of her supervised release as alleged in violation number one and set the matter for a disposition hearing on both violations one and two.  The Court has detained the defendant pending a final determination by the Court.

DATED this 22nd day of October, 2007.

MONICA J. BENTON
United States Magistrate Judge

1    cc:   Sentencing Judge            :     Hon. Robert S. Lasnik
           Assistant U.S. Attorney     :     Bruce Miyake
2          Defense Attorney            :     Lee Covell
           U. S. Probation Officer     :     Tammy White
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAGE -7-